**YOUNGER BROS., Inc., v. MOORE.**

No. 3888.

Court of Civil Appeals of Texas. El Paso.
Dec. 21, 1939.

Rehearing Denied Jan. 18, 1940.

Clifford Stone, of Henderson, Benbow, Saunders & Holliday, of Houston, and Touchstone, Wight, Gormley & Price, of Dallas, for plaintiff in error.

Hill & Bath, of Henderson, and Wm. Madden Hill, of Dallas, for defendant in error.

PRICE, Chief Justice.

This suit was instituted in one of the District Courts exercising jurisdiction in Rusk County by J. O. Moore, as plaintiff, herein so called, against Younger Brothers, Inc., a corporation, as defendant, and it will be hereinafter so called.

Plaintiff's trial petition alleged that a truck owned and operated by defendant on a public highway in Rusk County collided with a truck operated by plaintiff, and thereby plaintiff suffered severe and permanent injury. Many grounds of negligence are charged against defendant in the manner of the operation of its truck on the occasion in question.

Defendant answered by general denial and a very detailed plea of contributory negligence. The trial was by a jury, the case being submitted on some sixty or more special issues.

Various issues of negligence on the part of the defendant were submitted and all found against defendant. The issues of contributory negligence submitted were all found in favor of the plaintiff. The verdict assessed plaintiff's damages at $30,309.70. Judgment was entered on the verdict in favor of plaintiff. Defendant duly perfected this appeal.

The findings of the jury find ample support in the evidence and we find the facts in accordance therewith.

Defendant took a great number of exceptions to the court's charge. These exceptions constitute 93 paragraphs with many subdivisions in each paragraph, a copy of the exceptions taken constitute about 70 pages of the transcript. The trial court overruled each and all of these exceptions, and in our opinion the action was entirely proper. Defendant requested

some 20 or more special issues many of which were subdivided. These requests were, we think, all refused by the trial court. The amended motion for a new trial took 183 pages, subdivided into 569 paragraphs.

From this welter of confusion and tautology defendant brings forward in its brief 71 assignments of error.

Defendant at all relevant times here was engaged in the trucking business in the oil fields. Its operations seem to have been rather extensive, in that in the pursuit of this business it owned and maintained numerous trucks and employed drivers, helpers and executives. Its business was to transport goods for others for compensation. Sinclair Prairie Oil Company, for convenience hereinafter called Oil Company, is engaged in Rusk County in the operation of oil wells. Defendant had some sort of arrangement or contract with the Oil Company with reference to doing its trucking.

On the morning of November 12, 1937, W. F. Parker, construction foreman for the said Oil Company, communicated to Earl Robins, field superintendent of the defendant in its business in the eastern part of this state, that he wanted a truck and helper to do some hauling for his Company.

On the occasion in question and at all relevant times A. D. Koen and W. W. Williams were employees of defendant and subject to the orders and directions of Robins, as foreman. Koen was employed by defendant as a truck driver and paid daily wages by defendant twice each month.

At about 8 A. M. on the morning of November 12th Koen and Williams left the headquarters of defendant in pursuance of orders from Robins in one of defendant's trucks to do hauling for the said Oil Company. They first proceeded to the town of Arp where the defendant's truck was serviced with oil, gasoline, etc. This at the expense of defendant. Then they drove to about two miles from there to the camp of the Oil Company. Koen reported to Parker, construction foreman of the Oil Company; Parker gave him instructions to get a load from the warehouse of the Oil Company and to take same to the Peter Tipps lease; Koen proceeded to get the load and started therewith south to said lease along the Arp-Henderson highway. As defendant's truck proceeded along this highway south plaintiff was proceeding in a truck along the same highway north. The trucks, in an attempt to pass each other, collided. This collision, as established by the verdict of the jury, was due to the negligence in the operation of defendant's truck on the occasion in question.

Plaintiff, a man of about 32 years of age, as a result of the collision, suffered terrible injuries. The seriousness and effect of these injuries are not seriously controverted by defendant. His back was broken. The treatment necessitated him to stay in a plaster cast for about four months, and at the date of the trial he was wearing a brace. The evidence was sufficient to support a finding of a permanent destruction of earning capacity; also that plaintiff did and perhaps would suffer great pain. He was earning at the rate of something over $150 per month at the time of his injury, his employment relatively permanent. The Oil Company was to and did pay for the services performed for it by defendant on the occasion in question on an hourly basis.

Defendant contends that under the undisputed testimony it was not liable for the negligence of Koen in the operation of its truck on the occasion in question for the reason that as a matter of law Koen was then the special employee of the Oil Company and not subject to defendant's control.

The facts bearing on the relationship of the Oil Company to defendant, Koen to defendant and to the Oil Company, as hereinbefore stated, have been recited from the testimony of defendant's witnesses.

■ The relationship of employer and employee is contractual in its nature. 18 R.C.L. p. 493, sec. 3.

■ Beyond any question Koen was in the general service of defendant. If he was in the special service of the Oil Company and at the time defendant was without right to control the manner of performance of the work, it is not liable for torts committed in the course of this special employment. Missouri Pac. R. Co. v. Jones, 75 Tex. 151, 12 S.W. 972, 16 Am. St.Rep. 879. If full credit be given to the testimony of defendant's witnesses, the Oil Company was to direct what work was to be done. The determination of what work is to be done does not imply the right of directing how it was to be done. Walker v. El Paso Electric R. Co., 103

Tex. 259, 126 S.W. 262; Fink v. Brown, Tex.Civ.App., 183 S.W. 46, modified on another point, Tex.Com.App., 215 S.W. 846.

In Fink v. Brown, supra, the employee was sent by his master to install flues in a boiler for a partnership. His employer received as compensation ninety cents per hour and furnished no materials. It is held a question of fact whether he was in the special employ of the partnership or remained subject to the control of his general employer. In this case the opinions fail to show the business in which the conceded general employer of Brown was engaged. Here the work of defendant was hauling goods for others. Koen was paid by defendant to help it do this work. The question here is, who, at the time of this accident, had the legal right to control the manner in which Koen drove defendant's truck? Attached to this right of control is legal responsibility for his acts or omissions.

"The master is the person in whose business he is engaged at the time, and who has the right to control and direct his conduct." Higgins v. Western Union Tel. Co., 156 N.Y. 75, 50 N.E. 500, 501, 66 Am. St.Rep. 537.

"The business of the employer [the truck company] included the operation and driving of the car while engaged in the service for which leased." Thatcher v. Pierce, 281 Pa. 16, 125 A. 302, 304.

We are of the opinion that a truck driver employed by a trucking company is subject to its control while driving its truck in the transportation of goods for one of its customers. Tilling v. Indemnity Co. of North America, Tex.Civ.App., 283 S.W. 565, writ denied; Standard Oil Co. v. Anderson, 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480; Driscoll v. Towle, 181 Mass. 416, 63 N.E. 922; Texas Company v. Brice, 6 Cir., 26 F.2d 164; Craige v. Austin Powder Co., 4 Cir., 91 F.2d 664; Williams v. Gulf Refining Co., Tex.Civ.App., 229 S.W. 959; Traders & General Ins. Co. v. Jones, Tex.Civ.App., 95 S.W.2d 189; Dave Lehr, Inc. v. Brown, 127 Tex. 236, 91 S.W. 2d 693; Smith Bros. v. O'Bryan, 127 Tex. 439, 94 S.W.2d 145.

We do not mean to hold that the proposition above set forth is universal in its character and that there may not be exceptions. However, it has application to the situation in this case. The evidence shows without contradiction that at the time of the accident the driver Koen was subject to the control of defendant.

To our mind the case of Dave Lehr, Inc. v. Brown, supra [127 Tex. 236, 91 S.W.2d 694], by the Commission of Appeals, is conclusive of the matter. Judge German, in the course of the opinion, quotes with approval from the case of Peer v. Babcock, 230 N.Y. 106, 129 N.E. 224: "A truckman hauling coal for coal dealers and using his own team and wagon in making deliveries to their customers at his own pleasure at a certain rate per ton, the places being indicated on delivery slips given to him, held to be a carrier for hire, and not an employee, for whose negligence, causing a collision, the dealers would be liable."

The ex parte acts of a master cannot make his servant the servant of another. The ex parte acts of the servant while performing the work of his master cannot shift responsibility therefor to another.

So far in this opinion we have considered the status of Koen to defendant from the standpoint of the testimony of defendant's witnesses alone. Now Robins, Koen and Williams were interested witnesses. The jury in passing on their credibility might discredit or might disbelieve all or any part of their testimony. Eliminating parts of the testimony of Robins, Koen and Williams we have this situation: A truck on the highway by the election of defendant, driven by a servant of defendant. The presumption from this state of circumstances would be that it was being driven in the business of defendant. Magnolia Coco Cola Bottling Co. v. Jordan, Tex.Civ. App., 47 S.W.2d 901; Id., 124 Tex. 347, 78 S.W.2d 944, 97 A.L.R. 1513; Brown v. City Service Co., Tex.Com.App., 245 S.W. 656.

If under the undisputed evidence Koen was the servant of defendant on the occasion in question it is perhaps unnecessary to discuss the error charged by defendant in the submission of this issue to the jury. Special issue No. 21 was as follows: "Do you find from a preponderance of the evidence that at the time and place of the collision the driver of defendant's truck was performing acts which he had been employed by the defendant to do?"

The finding was in the affirmative.

We think this issue substantially submits the ultimate issue in the case. If at the very time of the collision Koen was performing the work he was employed to do by his master he was the servant of his master and as such subject to his control. The defendant here is not an employment agency. If it were so a different question might be presented. It is a truck company. The evidence fails to show anything out of the ordinary as to the contract between it and the Oil Company.

The defendant excepted to this charge on the ground that the court nowhere in its charge defined the meaning of the term "performing acts which they had been employed by the defendant to do." Now those exact words were not used in the issue complained of. Ordinarily, one would think that what the defendant wanted was for the court to define or explain the words "was performing acts which he had been employed by the defendant to do." However, an examination of defendant's exception to the court's charge shows that the expression embodied in the exception "they were employed," etc., was used four times. In the exceptions it appears that defendant took about fifteen separate exceptions to issue 21. These exceptions are most confusing and must have been so to the trial court. The conclusion on the part of the trial court would have perhaps been justified, the exceptions being so minute, that defendant demanded and required only a strict and a liberal conformity to the exceptions as made.

It is assigned as error here that the court failed to define the words "performing acts which he had been employed by the defendant to do," used in that issue, and we shall consider it as though defendant had made in his exceptions these exact words. It is contended the words "performing acts which he had been employed by the defendant to do" constitute a legal term, and, as such, under Article 2189, R.S., require definition. Now, the phrase does not seem to us to have any peculiar legal significance as such. The words are all words of common, everyday meaning. It is true that the inquiry was not exactly "was at said time Koen driving the truck subject to the control of the defendant?" However, if he was driving the truck for the defendant at said time under the facts it is clear he was subject to the control of the defendant and the issue does substantially submit the question. Now the ultimate issue was, as argued, correctly we think, by defendant, "who had the right to and was controlling and supervising his work and the details thereof at the particular time involved in this case?" The issue submitted was not a defensive issue, but a submission of one theory of plaintiff's case. Disregarding defendant's defensive theory which, as we have pointed out, after all was only an hypothesis under the evidence, it submitted a theory tendered by the evidence on behalf of plaintiff. If Koen had been employed by defendant to drive the truck and at the very time was driving the truck as he had been employed to do he was acting in the scope of his employment. If Koen was acting within the scope of his employment for defendant at the time, defendant was liable for his acts.

Furthermore, the phrase sought to be defined has no peculiar legal or technical significance. To define it, as defendant seems to contend, would take the words out of their regular and ordinary meaning. We do not believe under Article 2189, R. S., it was the duty of the court to define this phrase. Guitar v. Wheeler, Tex.Civ. App., 36 S.W.2d 325; General Motors Acceptance Corp. v. Killingsworth, Tex.Civ. App., 54 S.W.2d 266; Trinity-Universal Ins. Co. v. Maxwell, Tex.Civ.App., 101 S.W.2d 606; Watchtower Mut. Life Ins. Co. v. Davis, Tex.Civ.App., 99 S.W.2d 693; Broaddus v. Long, Tex.Civ.App., 125 S.W. 2d 340; Federal Underwriters Exchange v. Crow, Tex.Civ.App., 118 S.W.2d 1073.

Defendant advances this proposition: "It is improper to instruct a jury to answer a special issue either 'Yes' or 'No,' since such instruction destroys the Judge's Charge on the burden of proof contained in the issue and deprives the defendant of its right to a negative answer where the answer does not preponderate either way but is evenly balanced, since the jury will understand from such instruction how to answer the question, that an answer either in the affirmative or negative must be supported by a preponderance of the evidence."

It is asserted the proposition is germane to assignments of error Nos. 37 to 70, inclusive. Special issue 21, heretofore copied herein, is a fair sample of the issues at which these assignments are leveled. Same are overruled.

■ By proposition it is asserted it was reversible error for counsel of plaintiff in his closing argument to the jury to repeatedly read to the jury from what purported to be a court reporter's transcript of the testimony of the witnesses. Five assignments of error are briefed under this proposition. While deeming it immaterial, the premise of this proposition that counsel purported to read from the court reporter's transcript of the testimony of the witnesses, does not appear from the statement to be strictly correct. It fairly appears that Senator Hill did read from something which purported to be some record or memorandum of the testimony of some of the witnesses. It is not charged that he misquoted or misrepresented a word of the testimony. An accurate reproduction of the testimony was his right. If he saw fit to rely on memorandum rather than his memory, in our opinion he had a perfect right to do so.

■ Questions of argument are involved herein. It appears that counsel for the plaintiff in the closing argument, after complimenting counsel for the defendant for the skill, zeal and fidelity with which they had represented their client, said further that "they lacked the ability to look on the sentimental side of things; that it can't matter to them if by chance through misinterpretation of what actually occurred this man would be relegated to a position on the street corner with a tin cup and a bunch of pencils to eke out his existence." On objection the court promptly admonished counsel for plaintiff to stay within the record. Defendant sought no further relief at the hands of the court. The argument was a mild reflection on counsel for defendant. They were zealous in the protection of the interest of their client. Properly they urged their defenses regardless of the effect it would have on the welfare of the plaintiff. The prompt admonition of the court cured any error there might have been in the argument.

■ Mr. Bath in the opening argument in discussing special issue No. 19a submitting the issue of compensation for pain and suffering, after discussing the evidence tending to show the serious and painful nature of plaintiff's injuries, said: "It is hard to say: 'I will suffer this much for this much money, I will suffer the pain and torment of a broken back for Ten Thousand Dollars.' Would you do it?" Upon objection by defendant's counsel the court sustained the objection and forcefully instructed the jury to disregard the argument. The effectiveness of the instruction is reflected in the finding of the jury as to this issue. One thousand dollars was assessed for past and future suffering. This is indeed moderate considering the character and nature of plaintiff's injury. The error in this argument was cured by the instruction to the jury.

■ In the opening argument Mr. Bath said that the truck driver was still in the employ of the defendant, and he believed he thought more of his job than he did of the truth. This argument was entirely legitimate. Only the facts were stated upon which the belief was founded. Counsel has a right to argue the credibility of witnesses.

■ Mr. Bath in his opening argument in discussing the compensation for loss of earning capacity said in substance that it was easy to arrive at the loss from (November) the date of the injury to the present time, $150 per month; that plaintiff had a life expectancy of 32.5 years; if he made $1,800 a year that would be more than $50,000; that that would be too much, but you must give him what amount of money, if paid now, would recompense him; that would perhaps bring him an income to equal that; that would give him some way of investing the money that he could earn $150 a month. Mr. Touchstone objected on the ground the argument was outside of the instruction of the court, highly inflammatory and prejudicial, and no evidence to support it. The court admonished counsel to stay within the evidence. Defendant sought no further instruction of the jury by the court. A legal measure of damages is not presented by the argument. It, however, is not susceptible of the construction premised in the proposition, "that if same were invested it would yield an amount equal to $150 per month." The statement was "that would give him some way of investing the money that he could earn $150 per month." Now the statement is at least susceptible of the construction that the money alone was not to bring in the income, but he was to earn the income in connection with the investment. This was in the opening argument. With the text of the court's charge before the jury defendant had a right to reply thereto and probably did. We hold that reversible error is not shown by the assignment.

Senator Hill in the closing argument for the plaintiff said in substance: "And you would put him in a position financially where he won't at least endure the pangs of hunger, though according to the testimony here he will forever endure the pain." Just exactly what took place in respect to this argument does not clearly appear. The matter complained of is embodied in defendant's bill of exception No. 18. The bill recites that the argument complained of was made over the objection of defendant. Whether defendant tendered objection at the time the argument was made does not appear. If he did tender such objection and the same was overruled—it does not appear from the bill he made exception thereto at said time. It is not such an argument that an instruction would not have cured same. In the state of the record we do not think that error is presented.

Senator Hill in closing made this argument: "Dr. Suehs and Dr. O'Bryne told you that so far as manual labor was concerned he was totally and permanently disabled. So far as manual labor is concerned, Mr. Wright, he is dead—." Mr. Touchstone objected. Mr. Hill said "I am sorry." The court instructed Mr. Hill not to speak to any juror and instructed the jury to disregard the remark. Reversible error is not shown.

Mr. Bath in the opening argument in discussing special issues 20 and 21 said, in substance, that defendants have attempted to dodge responsibility in every way conceivable. They have sought to do so by saying that the driver of the truck was not working for Younger Brothers, but was working for the Sinclair Prairie Oil Company. This argument we think entirely legitimate. It did not have the effect of informing the jury of the effect of their findings. It was so obvious that if Koen was the servant of the Oil Company at the time of the accident that defendant would not be liable for his acts that any sensible man could not fail to so understand. Appellant was striving throughout the case to avoid liability. The whole purpose of the trial was to determine this question. It was a legitimate inference that any and all of its purposes were to avoid the consequences of the collision.

Eighteen bills of exception were taken by the defendant to the argument of the two counsel for plaintiff. Seventeen times they were interrupted in the course of their argument by objections. Insofar as there was a legitimate ground of complaint in each instance the court seems to have carefully guarded and vindicated the rights of defendant. Many times these interruptions were as to matters, the right of plaintiff's counsel to make the argument and pursue the course taken was absolutely clear. Under such circumstances hasty and unconsidered reactions are not surprising.

This case on the whole was tried with extreme care by the trial judge. The difficulties under which he labored are reflected by the record. Seventy pages of exceptions to a court's charge in a damage suit involving no question of a special difficulty hardly seem to be required. A motion for a new trial containing 567 separate and distinct grounds seems hardly to be called for. In spite of the difficulties presented, the trial judge seems to at all times maintain an absolutely impartial and tolerant attitude to counsel on either side. The record presents no substantial error.

It appears from the evidence and agreement of the parties herein that plaintiff's employer had a workman's compensation policy with the Petroleum Casualty Company; that that Company had paid to plaintiff under this policy the sum of $840, and further paid the doctors' bills in the sum of $250 for plaintiff. The law is clear under these conditions. Section 6a, Article 8307, as construed by our courts, precludes other compensation under the Workmen's Compensation Law if the employee elects to proceed to final judgment against the third party alleged to be liable for his injury. Texas Employers Ins. Ass'n v. Brandon, 126 Tex. 636, 89 S.W.2d 982. Section 6 of Article 8307 gives the right of subrogation to the insurance carrier. In the case of El Paso Electric Co. v. Perkins, Tex.Civ.App., 292 S.W. 935, writ denied, a somewhat analogous situation arose. The point is not discussed in the opinion. However, an examination of the record in that case shows that the defendant contended that the employee whose death was involved in the action was covered by compensation insurance on behalf of Stone-Webster, his employer. It urged this as a defense, pleading that $720 had been paid as compensation and that the total compensation collectable was $7,200, and sought to off-set same. It appeared from the evidence that

some $720 had been collected from the Insurance Company by the beneficiaries of the deceased's employer. On motion for new trial the trial court modified the judgment providing that to the extent of $720 the recovery of plaintiff should inure to the benefit of the insurance carrier. It seems clear to us that plaintiff's recovery here should inure to the benefit of the Petroleum Casualty Company to the extent of $840 at least, and that the judgment of the trial court should be modified so as to so provide. As to the $250 paid by the insurance carrier, we are not entirely clear. Plaintiff sought recovery for medical services reasonably necessitated by his injury. This suit covered, or should have covered, the value of all medical services. The defendant, as well as plaintiff, is entitled to have this litigation ended.

It is ordered that the trial court's judgment be modified providing that $1,090 of the recovery awarded plaintiff be held in trust for the Petroleum Casualty Company. The said sum of $1,090 to bear interest at the rate of six per cent per annum from the judgment of the trial court.

Modified and affirmed.