PIONEER CASUALTY COMPANY, Appellant,

v.

Elton Glynn BUSH et al., Appellees.

No. 486.

Court of Civil Appeals of Texas, Tyler.

June 25, 1970.

Rehearing Denied July 16, 1970.

James N. Phenix, Henderson, for appellant.

Fairchild, Hunt & Price, Center, for appellees; Robert Fairchild, Center, of counsel.

MOORE, Justice.

This is an appeal from a summary judgment entered below in favor of the plaintiff, Elton Glynn Bush, in a suit on an automobile liability policy. The suit arose out of appellant's Pioneer Casualty Company, refusal to pay a judgment for $10,000 entered in a previous case in favor of Elton Glynn Bush, against his brother Coye DeWayne Bush for personal injuries received as the result of a truck accident.

Appellant had sold to Coye D. Bush, the father of Elton Glynn and Coye DeWayne, an automobile policy insuring a 1968 Chevrolet dump truck which was used, along with a 1963 Chevrolet dump truck, in his business of hauling sand, dirt and gravel. The policy covered any person driving the truck with the consent of the named insured.

On the morning of August 19, 1968, Mr. Bush instructed his two sons to take the trucks to his service station to be fueled preparatory to the day's work. Elton, then 16 years old, started out in the 1963 truck, followed in the 1968 truck by his brother Coye, who was at the time 14 years old. Somewhere along the way, Elton's truck stalled; he pulled it to the side of the road and climbed under it to replace a wire on the starter. For some reason, Coye failed to stop soon enough, running into the rear of the stalled truck, pushing its rear wheels over his brother and then running over him with the front wheels of the 1968 truck. Elton suffered extensive head, neck and chest injuries.

Suit was brought by Elton, through his uncle as next friend, against Coye for damages resulting from the injury. That suit resulted in a judgment in favor of Elton for the sum of $10,000. Demand was made of appellant to pay the judgment on the basis that Coye was an insured under the policy, thereby making Pioneer Casualty Company liable for the judgment.

When Pioneer denied liability, Elton Glynn Bush, through next friend, filed the present suit against the insurance company. Subsequently he filed a motion for summary judgment. After a hearing, summary judgment was entered in favor of appellee, Elton Glynn Bush, and the insurance company perfected this appeal.

Appellant's main contention below and here is that both Elton and Coye were employees of the named insured, Coye D. Bush, their father, and therefore a recovery by appellee was prohibited under the following exclusionary clause in the policy:

"* * * The insurance with respect to any person or organization other than the named insured or such spouse does not apply:

* * *

(2) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer."

The policy did not contain any provision excluding liability for injury inflicted by one member of the household upon another member of the household.

In his motion for summary judgment, appellee takes the position that the proof conclusively shows that both he and his brother were unemancipated minors at the time of the accident. Therefore he contends that neither of them could enter into a binding contract with their father so as to create an employer-employee relationship. Hence he argues that since there was no employer-employee relationship, he was not subject to the exclusionary clause in the policy and that the summary judgment must be sustained. The insurance company resisted the motion for summary judgment by pleading that both appellee and his

brother were employees and subject to the exclusionary clause in the policy. The company also offered the deposition testimony of Mr. Bush, Elton, and Coye, which it contends was sufficient to raise an issue of fact upon the question of whether or not appellee and his brother were employees of their father. Therefore the insurance company contends that the trial court erred in granting a summary judgment.

After a review of the authorities, we find that we are not in accord with appellee's proposition that a minor cannot contract with the father. With the exception of a limited type of contract, the contract of a minor whose disability has not been judicially removed is not void but only voidable at the minor's instance. Brown v. Farmers' & Merchants' Nat. Bank of Cleburne, 88 Tex. 265, 31 S.W. 285 (1895); Prudential Building & Loan Ass'n v. Shaw, 119 Tex. 228, 26 S.W.2d 168, 27 S.W.2d 157 (1930); Sims v. University Interscholastic League, 111 S.W.2d 814 (Tex.Civ.App., Beaumont, 1937, dismissed as moot, 131 S.W.2d 94); Rutherford v. Hughes, 228 S.W.2d 909 (Tex.Civ.App., Amarillo, 1950, n. w. h.). Emancipation, either express or implied, constitutes only an agreement by the parent to relinquish his parental rights to control the minor and to the minor's services and earnings. Furrh v. McKnight, 6 Tex.Civ.App. 583, 26 S.W. 95 (1894, n. w. h.); Weimhold v. Hyde, 294 S.W. 899 (Tex.Civ.App., Amarillo, 1927, n. w. h.); Durham v. I. C. T. Insurance Co., 283 S.W.2d 413 (Tex.Civ.App., Dallas, 1955, writ dism.). It has also been held that an unemancipated minor may enter into a valid contract of employment with a stranger and the father can make any contract with his minor son that a stranger could make. Chauncey v. Gambill, 126 S.W.2d 775 (Tex.Civ.App., Ft. Worth, 1939, dism., judg. cor.). Thus, if an unemancipated minor can contract with a parent, the question of whether either or both sons of the insured had or had not been emancipated would not control the disposition of the case, as appellee contends.

As we view the record, the controlling issue is whether or not both minor sons were employees of their father. If so, appellee would be subject to the provisions of the exclusionary clause of the policy.

In construing similar provisions in public liability policies, the courts have held that in order for the foregoing exclusionary clause to become applicable, both the injured party and the tortfeasor must be employees of the insured and the injury must have occurred in the course and scope of employment. 7 Am.Jur.2d, p. 458, sec. 133 and the cases cited in notes 8 and 9.

Since this is an appeal from an order sustaining a motion for summary judgment pursuant to Rule 166–A, Vernon's Texas Rules of Civil Procedure, the sole question is whether a genuine issue of material fact is presented by the pleadings, affidavits and other documents presented to the trial court. The burden of demonstrating that no genuine issue as to any material fact exists rests upon the party filing the motion for summary judgment. In determining the question of whether a genuine issue of material fact is presented, we must view the record in a light most favorable to the party opposing the motion and accept as true the evidence which tends to support its position. Rule 166–A, Vernon's Texas Rules of Civil Procedure; Gulbenkian v. Penn, 151 Tex. 412, 252 S.W.2d 929; Great American Reserve Insurance Company v. San Antonio Plumbing Supply Company, Tex., 391 S.W.2d 41, 47; Manney & Company v. Texas Reserve Life Insurance Company, 407 S.W.2d 345, (Tex. Civ.App., Dallas, 1966, n. w. h.); White v. Lakewood Bank and Trust Company, 438 S.W.2d 129, 131 (Tex.Civ.App., Dallas, 1969, n. w. h.).

We recognize, and here apply, the general rules of construction to be applied to contracts of insurance as outlined in Trinity Universal Insurance Company v. Tubbs, 342 S.W.2d 209 (Tex.Civ.App., Amarillo, 1960, ref., n. r. e.) and cases cited therein. The insurance contract before us does not contain a definition of the term "employee". With regard to this particular term, the Texas Supreme Court, in T.I.M.E., Inc. v. Maryland Casualty Company, 157 Tex. 121, 300 S.W.2d 68 (1957), in construing a policy provision similar to the one at bar, has stated:

" * * * In the absence of any such limiting language the word 'employee' as used in paragraph (a) will be given its usual and ordinary meaning and will be held to refer to one who is employed by the principal insured."

■ An employer-employee relationship must be founded in contract, express or implied, oral or written. Carter Publications v. Davis, 68 S.W.2d 640 (Tex.Civ. App., Waco, 1934, writ ref.); Younger Bros. v. Moore, 135 S.W.2d 780 (Tex.Civ. App., El Paso, 1940, err. dism., judg. cor.); Mercury Life and Health Company v. De Leon, 314 S.W.2d 402 (Tex.Civ.App., Eastland, 1958, ref., n. r. e.); Parks v. Kelley, 126 S.W.2d 534 (Tex.Civ.App., Amarillo, 1939, n. w. h.); Slaughter Cattle Co. v. Pastrana, 217 S.W. 749 (Tex.Civ.App., El Paso, 1920, dism., w. o. j.). The right of the employer to control the employee flows from this contract, not from the common law right of the parent to control his minor children. In its reply to the motion for summary judgment, the appellant offered evidence tending to show that both Elton and Coye were employees of their father and hence appellee was precluded from a recovery under the exclusionary clause in the policy. The effect of this was to cast the burden of proof upon the appellee to prove, as a matter of law, that neither of the sons were employees at the time of the accident or to at least prove that no genuine issue of fact existed with respect thereto.

■ The deposition testimony of Coye shows that he was 14 years of age, living in the home of his parents and attending school except during the summer months. According to his testimony, as well as that of his father, an express oral contract was entered into under the terms of which he was to be paid for his work in hauling dirt and gravel at the rate of $60.00 per week. While the evidence shows that Coye was never actually paid $60.00 per week, both Coye and his father testified that after Elton's injury, the father recognized his debt to Coye and in satisfaction thereof transferred to him an automobile. There seems to be no dispute that he worked under the supervision and control of his father. Under the circumstances, we have concluded that we cannot say that Coye was not an employee as a matter of law, or that no genuine issue of fact existed thereon. We are inclined to believe that the evidence was sufficient to raise an issue for the trier of the fact.

With respect to Elton's relationship with his father, the evidence is somewhat more vague and indefinite. At the time of the accident, he had only been working for his father for one week, having worked for another employer all summer. While both Elton and his father testified that they had made no agreement with respect to his employment, the father testified that he had intended to pay Elton at the rate of $60.00 per week, but had not told him so. It is without dispute that Elton worked under the supervision and control of his father. The evidence does show, however, that he did not work regularly in that he was permitted to take the truck to the high school where he engaged in football practice on various occasions and returned to work thereafter. Thus, whether Elton was merely an occasional family volunteer or whether he was an employee in a legal sense, is by no means clear. Upon a review of the entire record, we have concluded that there is at least some evidence, when viewed in a light most favor-

**170**

able to appellant, to raise a disputed fact issue upon the question of whether or not Elton was an employee of his father. If this be true, it follows that the summary judgment was improvidently granted. For the reasons stated, the judgment must be reversed and the cause remanded for trial on its merits.

Reversed and remanded.

## ON MOTION FOR REHEARING

 Appellee urges that since it was admitted by appellant's attorney in oral argument before this Court that neither he nor his brother had been emancipated, they were, as a matter of law, precluded from suing and obtaining judgment against their father. Based upon this premise, appellee argues that since they were barred from a recovery for their services, no employment contract came into existence and as a result, neither he nor his younger brother could have been employees of their father. Consequently, he continues to insist that the exclusionary clause in the policy does not apply to him. As we view it, the argument proceeds upon the false premise that an unemancipated minor is without legal capacity to enter into an employment contract with a parent. There is nothing to prevent a father and his son from entering into a contract of employment. 67 C.J.S., Parent and Child, § 38; 98 C.J.S., Work and Labor, § 17; Bolman v. Kark Rendering Plant, 418 S.W.2d 39 (Missouri Supreme Court, 1967). Whether an unemancipated minor can sue and obtain judgment against a parent for his services would depend, among other things, upon whether or not the parent set up unemancipation as a defense. In any event, the question of whether or not the insured's minor sons could eventually recover judgment would not be controlling in determining the ultimate issue of whether or not a contract of employment existed.

The motion for rehearing is overruled.